WILLIAM M. BAILEY *et al. vs.* RUSH C. HAWKINS *et als.*

A testator created a trust by his will directing that the "trustees shall stand possessed of the said fund . . . in trust for my grandson . . . in case he should survive me and attain the age of twenty-one years," directing further that the net income of the fund should be paid to the grandson during his life, and in case of the death of the grandson before the testator or before attaining the age of twenty-one years, the trustees should stand possessed of the fund for such child or children of the grandson as should survive him, to "his, her and their executors, administrators and assigns absolutely." The grandson survived the testator and died testate more than twenty-one years of age.

*Held*, that the grandson took a vested interest in the principal of the trust fund which on his death was to be paid to his executor.

A devise in fee will be restricted and a devise for life enlarged to an estate tail by a gift over in case the devisee dies without issue, unless the context in the will requires a different construction. The regular limit of a fee tail is the failure of issue. These rules applied to a devise in the case at bar.

The testator provided in a codicil, "And in case of the failure of all the objects of the several trusts, created by my said original will and this my codicil, by death or otherwise or the failure of the issue of either or all of my said children, then in that case I declare that all the then remaining property, both real and personal, in the several trusts created in my original will and in my codicil shall vest in and be distributed to the persons who for the time being shall be entitled to the same under the statutes of the State of Rhode Island then in force regulating the distribution of intestate estates."

One of the daughters of the testator died without leaving any issue.

*Held*, in the circumstances from the other provisions of the will and to avoid repugnancy, that "failure of the issue of either or all of my said children," applied only to the child or children of a deceased child who survived the testator and attained the age of twenty-one years, and to the issue of such child or children dying within that age who during minority were to receive the income of the parent's portion. Hence, that the words in question applied not to "children," but to "grandchildren," or remoter issue.

BILL IN EQUITY for instructions.

*July* 12, 1893. MATTESON, C. J. This is a bill by the trustees under the will of Caroline M. Brown for instructions.

The testatrix, in her will, after setting apart from the

property given to the trustees, a fund of twenty thousand dollars, and giving directions in relation to its investment, &c., provides: "And I declare that my said trustees shall stand possessed of the said trust fund, or sum of twenty thousand dollars, and the investments thereof, and the accumulations thereof, as hereinafter provided, and invested from time to time, in like manner, as the principal, in trust for my grandson, Nicholas Brown, infant son of my deceased son, Alfred Nicholas Brown, in case he, my said grandson, should survive me and attain the age of twenty-one years; thereafter to pay to him the net rent, income and profits thereafter derived from said trust property, and the investments thereof, during his life, in semi-annual payments, or oftener in their discretion, for his use and benefit. But if my said grandson should die before me, or under the age of twenty-one years, then In Trust, for such child or children of my said grandson as shall survive me, in equal shares, if more than one, his, her and their executors, administrators and assigns, absolutely. And in case neither my said grandson, nor any child of his, should take a vested interest in said trust monies and premises under the preceding trusts, then In Trust, for the person or persons who, for the time being, shall be entitled to the residue of my said real and personal estate, under the ulterior provisions of this my will, and in like manner, shares and proportions, in all respects, as hereinafter provided concerning such residue." In the codicil of her will, the testatrix further provides: "And I declare, and my will is, that in the event of the death of my grandson, Nicholas Brown, leaving no lawful issue living at the time of his decease, who would, under the provisions of my said original will, be entitled to the said trust property, both real and personal, then one half part of said trust property, both real and personal, shall remain in my said trustees, and be held by them, under the same trusts as are provided in my said original will, for the one-half part of the rest and residue of my estate, real and personal, and given in trust for my two daughters aforementioned, Ann Mary B. Hawkins and Caroline M. C. Brown, and the other half part thereof shall be held by my said

trustees under the trusts created by this my codicil, for the one-half of the rest and residue of my estate, both real and personal, and given in trust for my two sons aforementioned, John Carter Brown and Grenville R. Brown," &c.

Nicholas Brown, the beneficiary under the trusts concerning the twenty thousand dollars, survived the testatrix, attained the age of twenty-one years and more, and died October 8, 1891, unmarried and without children, having never been married, and leaving a last will and testament.

In view of these facts, the trustees ask our instruction as to whether the principal of the trust fund of twenty thousand dollars, passed on the decease of the beneficiary to the executor of his will, or is to be retained by them under the other trusts created by the testatrix in the will and codicil.

We are of the opinion that the fund passed to the executor of the beneficiary. The limitation is that the "trustees shall stand possessed of the said fund . . . . in trust for my grandson . . . . in case he should survive me and attain the age of twenty-one years." If it had stopped here, no one would have doubted that an absolute equitable interest in the fund would have vested, on the happening of the contingencies specified, in the beneficiary; but it goes on to provide for the payment of the net rents, income and profits of the fund to him during life, and this it is which occasions the doubt whether the beneficiary took a vested interest in the principal of the fund, or only in the income. Our reasons for resolving the doubt in favor of the former construction are, *first*, the testatrix provides that in case of the death of her grandson before her death, or before attaining the age of twenty-one years, the trustees shall stand possessed of said trust fund for such child or children of his as should survive her . . . . his, her and their executors, administrators and assigns, *absolutely*. It thus appears that the testatrix contemplated that the child or children of her grandson, in case of becoming entitled to the benefit of the trust, should take an absolute interest in the fund, legal as well as equitable, which of course would include the fund itself as well as the income. If his child or children, succeeding him as bene-

ficiaries under the trust, were to take an absolute interest in the fund, it is not unreasonable to infer that the testatrix also intended that her grandson should also take an absolute interest in the fund, though as to him it was to be merely an equitable estate during his life, and that she for that reason added the clause directing the payment of the income to him during life. And, *second*, it is significant in this connection that the testatrix has nowhere in her will or codicil disposed of the principal of this trust fund, unless it be held to have vested in her grandson. The only provisions relating to it are those which we have quoted. All of the limitations over are predicated on the death of the grandson before that of the testatrix, or before his attaining the age of twenty-one years. It is not to be presumed that the testatrix intended to die intestate respecting this fund, and, therefore, the will is to be construed, if the construction is reasonably possible, in such manner as to avoid that result.

In the codicil to her will the testatrix makes the following devise: "And in addition to the one-fourth part of the rest and residue of my real and personal estate, devised in my said original will, in trust, for my said daughter Caroline M. C. Brown, I give and bequeath to my said trustees, their heirs, executors, administrators and assigns, my estate on Brown street, in the City of Providence, to be held by them subject to all the provisions, powers, conditions, limitations and obligations contained in the bequest of the one-fourth part of the rest and residue of my real and personal estate in my said original will, excepting that the same shall not be mortgaged or sold during the life of my said daughter, for any purpose whatsoever, and that all taxes, insurance and repairs upon said Brown street estate shall be charged upon and paid out of the share of the income derived from the one-fourth part of the rest and residue of my said real and personal estate, devised, in trust, for my said daughter; and I further declare and direct that my said daughter shall have the right to occupy the said house on Brown street, or to direct the said trustees to rent the same, for such length of time and to such parties, from time to time, as she may in writing request or

direct.   And my will is that upon the decease of my said daughter, leaving no heirs of her body, the said Brown street estate shall be held by my said trustees, subject to all the provisions, powers, conditions, limitations and obligations as are provided and declared in the original bequest to my said daughter, and subject to the final disposition of the rest and residue of my estate as is hereafter provided."

Caroline M. C. Brown married A. Paul Bajnotti.   She died April 6, 1892, without issue, leaving a last will and testament.

The second question propounded by the trustees for our opinion is, "Did Mrs. Bajnotti take an equitable fee tail in the Brown street estate under said clause, and, if so, did the general residuary clause of her will and codicil dispose of the same in fee simple?"

It is a well-settled principle that a devise in fee will be restricted, and a devise for life enlarged to an estate tail, by a gift over in case the devisee dies without issue, unless there is something in the context to justify a different construction. Williams on Real Property, 6th Amer. ed. 215, note and cases cited.   The devise before us is clearly within this principle.   The testatrix provides that, in case of the decease of her daughter, the Brown street estate shall be held by the trustees, subject to all the provisions, powers, conditions, limitations and obligations provided and declared in the original devise to her daughter of the one fourth of the rest and residue of the testatrix's estate, and subject to the final disposition of the rest and residue of her estate as subsequently stated in the codicil; or, in other words, the trustees are to continue to hold the Brown street estate, on the decease of Mrs. Bajnotti, subject to the limitations concerning her one fourth of the trust estate, in the same manner as though it had originally formed a portion of said one fourth, and subject, in case of the failure of the objects of the trusts, to the final disposition of the rest and residue as provided in the latter part of the codicil.   We are of the opinion, therefore, that Mrs. Bajnotti took an equitable estate tail in the Brown street estate.

The regular limit of a fee tail estate is the failure of issue. As Mrs. Bajnotti died without issue, her equitable estate tail terminated on her decease. Consequently, no estate remained in her on which her will could operate. This being so, there is no occasion to consider whether a general residuary clause in a will is sufficient under Pub. Stat. R. I. cap. 172, § 3, and cap. 182, § 1, to convey in fee simple real estate in which the testator has an estate tail, or whether it is necessary that the intent to pass a fee simple, and thus bar the entail, must expressly appear.

The third question propounded is answered by our answer to the second.

The fourth question propounded is, "Have the trustees, under the will and codicil of Mrs. Brown, power to sell said Brown street estate, now that Mrs. Bajnotti is dead?"

We think they have. The restriction on the sale of that estate was limited to the life of Mrs. Bajnotti. As she has died, that restriction is at an end and the trustees have the same power to sell the Brown street estate that they have to sell other portions of the trust property, if the prudent management of the trusts requires a sale.

On page 10 of the codicil occurs the following clause : "And in case of the failure of all the objects of the several trusts, created by my said original will and this my codicil, by death or otherwise, or the failure of the issue of either or all of my said children, then in that case, I declare, that all the then remaining property both real and personal, in the several trusts created in my original will and in this my codicil, shall vest in and be distributed to the persons who for the time being, shall be entitled to the same under the statutes of the state of Rhode Island, then in force, regulating the distribution of intestate estates."

The fifth question of the trustees is, "What effect has this clause on the rest of the will and how does it affect the matters set forth in the previous questions?" As suggested by counsel, this clause is found at the end of a very elaborate scheme of disposition, and it would seem preposterous to suppose that it was intended to destroy or affect this scheme.

It was undoubtedly intended to provide for contingencies, which, the testatrix thought, might arise in the event of the failure of the beneficiaries in the trust, either wholly or in part ; in which event, she provides that such portion of the trust estate as shall remain in the hands of the trustees shall vest in and be distributed to the persons for the time being who are her next of kin and heirs at law, according to the statutes then in force regulating the distribution of intestate estates.

The contingencies contemplated by the testatrix in this clause are three : *first*, the failure of all the objects of the several trusts; *second*, the failure of the issue of either of her children ; *third*, the failure of the issue of all her children. Neither the first nor third of these contingencies has yet occurred, and, therefore, it is not necessary to inquire how the portions of the clause relating to these affect the other portions of the will. As Mrs. Bajnotti has died without issue, it may be thought that the second contingency contemplated by the testatrix has arisen, and, therefore, it is necessary to enquire what effect, if any, in view of these facts, the portion of the clause relating to the failure of the issue of either of the children of the testatrix has on the estate in the hands of the trustees, the income of which, other than the Brown street estate, was paid to Mrs. Bajnotti during her life, or in other words, whether the portion of the clause in question is repugnant to the prior limitations in the will concerning the disposition of Mrs. Bajnotti's one fourth of the trust estate on her decease, without issue.

We do not think it so repugnant. The prior limitations in the will concerning the dispositions of the shares of deceased children, whether sons or daughters are the same. Those in relation to the disposition of the shares of the daughters are, that after the respective decease of the daughters of the testatrix, the principal of their respective shares shall be equally divided among such of their respective children, if more than one, as shall survive the testatrix and attain the age of twenty-one years, or die under that age leaving issue living, and that the trustees, during the mi-

nority of such survivor or survivors, may pay the income to
which the parent would have been entitled, if living, in their
discretion, to such survivor or survivors in equal shares, or
to any guardian of them, or person acting as such, whether
by appointment or not, or that the trustees may in their dis-
cretion, apply the income, from time to time, as occasion
may arise, according to their respective shares thereof, to
the support and education of such survivors respectively,
having due regard to their age, health, position and condi-
tion in life ; but that if either daughter should die without
leaving any child, who should survive the testatrix and live
to attain the age of twenty-one years, or die under that age
leaving issue living at her decease, then the trustees shall
hold the share of her so dying, in trust for the other of the
daughters of the testatrix during her life, and after her de-
cease, for her child or children, in the same manner as her
original share.   We are of the opinion that the failure of the
issue of either of the children of the testatrix, referred to in
the clause in question, applies only to the child or children of
a deceased child, who should survive the testatrix and live to
attain the age of twenty-one years, and to the issue of such
a child or children dying within that age, to whom, during
minority, the income of the parent's portion of the trust es-
tate is to be paid, or for whose benefit it is to be applied by
the trustees as specified ; the intention of the clause being
that in case of the failure of all such issue of a child, the
trust estate in the hands of the trustees should be distributed
to the next of kin and heirs at law of the testatrix, and that
it applies, therefore, not to the case of the death of a child
of the testatrix, leaving no issue, but to the case of the death
of a grandchild, or the deaths of grandchildren, or more re-
mote issue, causing a total failure of the issue of a child of
the testatrix, occurring after such grandchild, grandchildren,
or more remote issue, had become entitled to the benefit of
the trusts, but during his, her, or their minority and before
the trust estate had been distributed or conveyed to such
grandchild, grandchildren, or more remote issue by the
trustees.   This construction gives effect to the portion of

the clause under consideration without destroying or affecting the prior limitations of the will and codicil, and removes the repugnancy which apparently exists.

After the above opinion was announced, a petition for a reargument was filed and heard.

*May* 15, 1894. MATTESON, C. J. After our former opinion in this suit had been announced, counsel for the residuary legatees and devisees asked for a reconsideration of the question whether Nicholas Brown took a vested interest in the fund of twenty thousand dollars and its accumulations, or only in the income thereof during his life.

The clause creating the bequest, after setting apart the fund of twenty thousand dollars from the property given to the trustees and giving directions in relation to its investment, declares that the trustees shall stand possessed of the fund and the investments and accumulations thereof in trust for said Nicholas, in case he survives the testatrix and attains the age of twenty-one years; thereafter to pay to him the net rent, income and profits derived from said trust property during his life, in semi-annual payments, or oftener in their discretion. As Nicholas Brown survived the testatrix and attained the age of twenty-one years, the words expressing these contingencies may be eliminated from the consideration of the clause.

It is contended that this clause cannot be divided into two parts and the first construed as giving an absolute estate in the fund when the second expressly limits the estate to the income for life, and that on a proper analysis of the sentence it will be found equivalent merely to a gift of the income for life. We cannot assent to this view. Counsel do not tell us why the clause cannot be divided into two parts. It is, in fact, so divided by the testatrix. If it had been her intention, as we found in our former opinion, to give to her grandson an absolute estate in the fund, the control over which, except the income during her life, was to remain in the trustees, the language and form of the bequest were well adapted to that end. She begins by declaring that her trustees shall stand possessed of the fund in trust for her grandson, and

then directs them to pay to him the net rent, profits and income during his life. It seems to us the more natural and reasonable construction of the clause itself, laying aside for the present other indications in the will and codicil supporting that construction, to regard the first part of the clause as a gift of the fund and the second as directing the manner in which the fund is to be dealt with and applied for the benefit of the legatee, rather than as a diminution or qualification of the original gift. Such a construction is not without authority for its support. Thus in *Billing* v. *Billing*, 5 Sim. 232, the testator gave all his property in trust to trustees to invest it in securities at interest for the use of his nephew, to be paid at such time and in such manner as the trustees should see fit; and when the nephew should attain twenty-one that the trustees should pay him the amount of the interest or proceeds of the money come to their hands, as they might think most for his advantage, in weekly or quarterly payments, for his life. It was held that the nephew took an absolute interest in the principal, on the ground that the first part of the will contained an absolute bequest, and that the second part of it did not express a sufficiently certain intention to cut it down to a life estate. Again, in *Gurney* v. *Goggs*, 25 Beav. 334, there was a bequest of a thousand pounds to a married woman for her own use, with a direction, nevertheless, to the executors during her life to put the same at interest and pay to her the dividends and interest accruing thereon half yearly or otherwise, as the same should become due, for her own sole and separate use, independent of any husband. It was held that she took an absolute interest. And see *McMichael* v. *Hunt*, 83 N. C. 344. In *Norman* v. *Kynaston*, 3 DeG., F. & J. 29, a testatrix by her will directed that her fortune should be divided between A. and R. K, and appointed trustees for R. K. to pay half yearly his share. By a codicil reciting that A. was dead, she desired that her fortune should be divided between R. K. and T. K. for the use of their children, and when they became of age, to be settled on them, share and share alike. R. K. survived the testatrix

and died without having had a child. It was held that the gift to him by the will of a moiety was absolute and that the modification introduced by the codicil affected it only so far as was necessary to give effect to the disposition in favor of the children, and that this disposition having failed the absolute gift remained. There are numerous cases analogous in principle to those already cited in which the testator in the first instance divides his property among his children and then proceeds to declare certain trusts respecting the shares of his daughters to secure certain objects for their benefit, in which it has been held that on failure of such objects the absolute gift remained. *Whittell* v. *Dudin*, 2 Jac. & W. 279; *Hulme* v. *Hulme*, 9 Sim. 644; *Mayer* v. *Townsend*, 3 Beav. 443, were of this character. Lord Cottenham in *Gompertz* v. *Gompertz*, 2 Phillips, 107, recognizes this principle. Referring to these cases, he remarks: "In those cases there was a gift and then a direction as to the manner in which the legacy was to be invested and applied to the benefit of the legatee; not a diminution or qualification of the original gift, but merely a direction as to the mode in which it was to be dealt with and enjoyed in certain events." And see, also, for further illustrations of the principle, *Ring* v. *Hardwick*, 2 Beav. 352; *Winckworth* v. *Winckworth*, 8 Beav. 576; *In Re Forster*, 1 M. D. & D. 418; *Arnold* v. *Arnold*, 16 Sim. 404: *Eaton* v. *Barker*, 2 Coll. 124; *Dawson* v. *Bourne*, 16 Beav. 29; *In Re Young's Settlement*, 18 Beav. 199; *Lyddon* v. *Ellison*, 19 Beav. 565, 574; *Lassence* v. *Tierney*, 1 McN. & G. 551, 561.

Counsel have cited several cases wherein the legatees were held to have taken life estates which do not seem to us sufficiently in point to affect our conclusion. These cases, with one exception, are cases from Pennsylvania, in which State, as we infer from the remarks of Agnew, C. J., in *Bentley* v. *Kauffman*, 86 Pa. St. 99, 101, so far as personalty is concerned, the courts regard the intention of the testator as deduced by them from the will as the controlling principle in their interpretation, without regard to established rules of construction. Hence, their decisions, though doubtless based

for the most part on reasonable grounds, would hardly be accepted as authoritative in jurisdictions where less latitude of interpretation is allowed.

The first of the cases cited by counsel is *Eichelberger's Estate*, 135 Pa. St. 160, 171, in which the testator bequeathed a sum of money to his son Martin to be placed on interest by his executors and the interest thereof to be paid annually to the son during his natural life; in case Martin should die and leave no legitimate heirs of his own body, then the sum bequeathed to him should revert to the testator's other heirs. The ground of the decision was that it was the plain intent of the testator that the son should take the interest only of the fund during his life; that at his death it should go to his children if he had any, and in default of children, to the other heirs of the testator. Though the decision was, doubtless, in accordance with the current of authority in Pennsylvania, we think that generally it would have been held that the legatee took an absolute interest in the fund, instead of a life estate, on the well settled principle that language which in a devise of realty would create an estate tail, will, if the property be personalty, give an absolute estate. But, however this may be, the case differs from the case at bar in that it contains a limitation over in case the son should die without legitimate heirs of his own body, a limitation cutting down the estate given in the earlier part of the bequest, while in the case at bar the limitations over are predicated on contingencies which must take effect, if at all, before the legatee should take any interest whatever in the fund, and not on contingencies which make the interest defeasible after it had vested.

The second case relied on is *Urich's Appeal*, 86 Pa. St. 386. It is to the effect that a fee given in the first part of a will may be restricted by subsequent words to a life estate. The will was unskillfully drawn. The testator made certain devises to the devisees and their "heirs." The court found that notwithstanding the use of the word heirs, which would ordinarily create a fee, the testator's intent that the devisees

should take life estates only was sufficiently manifest from other portions of the will, and accordingly so held.

In *Bentley* v. *Kauffman*, 86 Pa. St. 99, and *Ritter's Estate*, 148 Pa. St. 577, also cited by counsel, the bequests were simply of the interest to the legatees during their natural lives, accompanied in the former by a limitation over of the principal in case the legatee should die without issue.

The last of the cases cited by counsel is *Ketcham* v. *Ketcham*, 66 Hun, 608, in which the residue of the estate was expressly given to the legatees, "to have and to hold the same so long as they should live."

But apart from the form and language of the bequest itself, the will and codicil contain other indications that Nicholas Brown should take an absolute interest in the fund in question.

There can be no doubt that his child or children, in case they had become entitled to the legacy, were to take the fund absolutely, for the testatrix has expressly so declared. The language of the limitation over to the residuary legatees of this fund is as follows: "And in case neither my said grandson, nor any child of his, should take a vested interest in said trust moneys and premises under the preceding trusts, then in trust, for the person or persons who, for the time being shall be entitled to the residue of my said real and personal estate, under the ulterior provisions of this my will," &c. It will thus be seen that the interest which the grandson was to take, as well as the interest which his child or children were to take, the latter being unquestionably an absolute estate, are both coupled together and described by the testatrix as a vested interest in the said *trust moneys;* if the testatrix had intended that her grandson should have merely a vested interest in the *income* of the fund, she would hardly have failed to perceive the distinction between a vested interest in the *income* and a vested interest in the *trust moneys* themselves.

Following the limitation over to the residuary legatees is a proviso that until the trust moneys and premises, that is, said fund and its accumulations, shall vest absolutely in and

become payable and transferable to some person or persons under the trusts declared, the trustees shall receive and invest the income (except the sum of $350 set apart for the payment of certain annuities created in a subsequent clause) in augmentation of the principal. The testatrix then declares that the annual produce and income, trust moneys, real estate, stocks and securities, and all accumulations of the same, being the said trust fund and its accumulations, as it may chance to have been invested by the trustees, shall go, and be, in trust for the person or persons who under the trusts,, shall become absolutely entitled to the funds from which the same shall have proceeded, &c. When it is considered that the grandson was, not only primarily, but in the event that he survived the testatrix and attained the age of twenty-one years, exclusively to be benefited by the bequest of the fund and its accumulations, the limitations over being predicated on his death before the happening of these events, and that the testatrix had already directed the payment of the income to him from the time of his becoming twenty-one years of age, there seems to be little room for doubt that when the testatrix directs the accumulation of the income until the trust moneys shall become vested absolutely in and become payable or transferable to some person or persons and declares that the annual produce and income, trust moneys, &c., shall go and be in trust for the person or persons who shall become absolutely entitled to the funds from which they shall have proceeded, she meant that in case her grandson survived her and attained the age of twenty-one years, that both the annual produce and income, and trust moneys, real estate, stocks and securities themselves, representing the trust fund, should vest in him, as they would have vested absolutely in his child or children or in the residuary legatees had the limitations over to them respectively taken effect.

Again, this intent is clearly manifested in the clause in the codicil revoking the annuity charged in the will on the *estate* and income, devised in trust for her grandson. If the testatrix had contemplated that her grandson was to take merely the income of the trust fund during his life, would she not

have referred to it merely as income, without using the word estate?

But it is further contended that whether Nicholas Brown be held entitled to an absolute interest in the fund, or to an equitable estate for life only, the express language of the codicil requires that the fund shall remain in the hands of the trustees for the benefit of the residuary legatees: or, in other words, that if it be granted that the will conferred an absolute estate in the fund, such interest is made defeasible and passed to the residuary legatees as an executory bequest on the happening of the contingency mentioned in the codicil, to wit, in the event of the death of Nicholas Brown leaving no lawful issue living at the time of his decease, who would under the provisions of the will be entitled to said trust property. It is argued that the language expressive of the contingency should receive its literal and natural meaning, and, hence, that the event of death should be referred in accordance with the general rule of construction to the death of Nicholas Brown whenever it should occur; and that as he left no issue at his decease of any class, and, consequently, none who would, under the provisions of the will, be entitled to the trust estate, the trusts in favor of the residuary legatees took effect. If the clause in the codicil had revoked or annulled the limitations in the will, so that it stood by itself as an independent provision, making it unnecessary to refer to the will, there would be force in these arguments. But the clause in the codicil does not purport to revoke or annul the limitations contained in the bequest, and, therefore, the will and the codicil are to be construed together and effect given to the latter only in so far as it modifies or qualifies the former. As the two are to be construed together it becomes necessary to look at the provisions of the will to ascertain whether the event of death referred to in the codicil means death whenever it may occur, or whether the limitations in the bequest are not sufficient to show that the event of death contemplated in the codicil is to be restricted to death within some particular period. We think that the limitations in the bequest sufficiently show that it is to be so

restricted. By referring to the terms of the bequest we find that the only issue of Nicholas Brown who would be entitled to the said trust property are such child or children as should survive the testatrix, and they would be entitled only in case their father did not survive the testatrix and attain the age of twenty one years. The clause in the codicil, therefore, taken in connection with the limitations in the bequest is the same as though it read, " And I declare and my will is that in the event of the death of my grandson, Nicholas Brown, *before me and before attaining the age of twenty one years, leaving no lawful child or children at his decease who shall survive me,* then," &c. The testatrix having fully set forth the limitations in the will did not deem it necessary to repeat them in the codicil.

It is evident, we think, that one of the main objects of the testatrix in making the codicil was to change the naked trusts in the will in favor of her two sons into active trusts and thereby to subject the trust estate in the hands of the trustees to restrictions and limitations calculated to secure in all circumstances which might arise, the enjoyment of the trust property to the sons and to their children, or if they had no children, to the sisters and their children. The accomplishment of this object made it necessary to change the limitation to the residuary legatees in relation to the fund in question, so far as the shares of the sons were concerned. This, it seems to us, was the purpose of the clause in the codicil and not any intent to change the bequest in other respects.

We see no reason to change the conclusion at which we arrived in our former opinion.

*Joseph C. Ely*, for complainants.

*Charles M. Salisbury, Arthur L. Brown & Samuel Norris, Jun.*, for the different respondents.

---

Note.—The will and codicil referred to in the above opinion are printed in the *Petition of William M. Bailey et al. for an opinion*, 13 R. I. 543.